UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD RILEY and GEORGE H. LEWIS, JR., et al., | |
| | Civil Action No. 08-5167 (SDW) |
| Plaintiffs, | |
| v. | **OPINION** |
| JOHN E. POTTER, Postmaster General, and FRANK BONGIOVANNI, United States Postal Service, | |
| | January 7, 2010 |
| Defendants. | |

**WIGENTON,** District Judge.

Before the Court is Defendants John E. Potter ("Potter") and Frank Bongiovanni's ("Bongiovanni") (collectively, "Defendants") Motion to Dismiss Plaintiffs Ronald Riley ("Riley") and George H. Lewis, Jr.'s ("Lewis") (collectively, "Plaintiffs") Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and dismissing additional claims against them pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (the "Motion"). This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is proper in this District pursuant to 28 U.S.C. § 1391. The Motion is decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons discussed below, the Court grants Defendants' Motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Riley and Lewis were both disabled employees of the United States Postal Service ("USPS") and worked at the Dominick V. Daniels Processing and Distribution Center ("DVD"). Plaintiffs seek to bring a class action complaint on behalf of themselves and others

1

"who were separated from employment and/or assigned to 'light duty' at the DVD in late 2007 or early 2008 pursuant to USPS' National Reassessment Process (NRP)." (Pls.' Compl. and Jury Demand ¶ 8 (hereinafter "Compl.").) Potter is the Postmaster General of the USPS. (*Id.*. ¶ 5.) Bongiovanni is the Senior Plant Manager and the "highest ranking USPS official at the DVD." (*Id.* ¶ 6.)

Riley began working for the USPS in 1987. (*Id.* ¶ 3.) In 1994, Riley became mentally impaired and was diagnosed with Schizoaffective disorder. (*Id.* ¶¶ 13-15.) Because of his disability Riley can not perform certain duties such as operating machinery but he maintains that he is still qualified to perform the functions of numerous other USPS positions. (*Id.* ¶¶ 16, 17.) In 1997, Riley began a reasonable accommodation process with the USPS, which placed him in jobs requiring him to do "prep" work or sort manual letters. (*Id.* ¶¶ 15, 18.) For over the past 10 years, Riley has worked regular hours without any discipline in these rehabilitation assignments. (*Id.* ¶ 21.)

In or about 2006, the USPS initiated a National Reassessment Process ("NRP"), which reviewed the status of disabled employees. (*Id.* ¶ 22.) On December 13, 2007, Riley gave the USPS a medical update from his treating physician, which he regularly submitted throughout the years. (*Id.* ¶¶ 20, 25.) About two days later, a USPS official told Riley that there was no available work and that he was being sent home as a result of his disability. (*Id.* ¶ 26.) Subsequently, Riley sent the USPS letters that requested reasonable accommodation, to no avail. (*Id.* ¶¶ 27, 43.) Riley contacted EEO on or about April 10, 2008. (Decl. of Eriberto Cedeno ¶ 5 (hereinafter "Cedeno Decl.").)[1] On or about April 14, 2008, Riley filed an EEO Complaint of Discrimination based on mental disability. (Compl., Ex. A) The USPS issued a Final Agency

---

[1] Eriberto Cedeno is the Manager of Equal Employment Opportunity Dispute Resolution for the USPS, New York Metro Area. (*Id.* at ¶ 1.)

2

Decision on January 7, 2009, after the filing of this Complaint. (Cedeno Decl. ¶ 9; Compl. ¶ 2.) The decision states that Riley "failed to state a claim for disability discrimination, and that the agency had legitimate and nondiscriminatory reasons for its actions." (Cedeno Decl. ¶ 9.)

The USPS hired Lewis in 1963. (Compl. ¶ 30) While employed with the USPS between 1979 and 1996, Lewis suffered numerous back injuries, culminating in a permanent back injury in 1996. (*Id*. ¶¶ 31, 32.) Due to his disability, Lewis was assigned to a permanent rehabilitation job, which he performed for about 12 years. (*Id*. ¶¶ 35, 36.) However, on or about January 23, 2008, Lewis was told to go home because there was no available work due to his physical disability. (*Id*. ¶ 37.) Subsequently, Lewis submitted numerous letters to the USPS requesting reasonable accommodation and provided a medical update from his physician; however, like Riley, his efforts were rejected. (*Id*. ¶¶ 38, 39.) Furthermore, Defendants refused to reinstate Lewis "unless he sign[ed] an affidavit swearing that his former USPS work assignment was a 'light duty' assignment," which Lewis contends it was not. (Compl. ¶¶ 40, 41.) He then contacted the EEO on or about March 18, 2008. (Cedeno Decl. ¶ 10.) On or about April 28, 2008, Lewis filed an individual administrative complaint for discrimination based on physical disability and age. (*Id*. ¶ 11.) On September 26, 2008, Lewis received the USPS Final Agency Decision, "which found that Plaintiff Lewis had failed to state a claim for age or disability discrimination, and that the agency had legitimate and nondiscriminatory reasons for its actions." (Compl., Ex. B.)

On October 21, 2008, Plaintiffs filed a Class Action Complaint seeking, among other things, damages, equitable and injunctive relief for violations of the Rehabilitation Act and the New Jersey Law Against Discrimination ("LAD"). Plaintiffs allege on behalf of themselves and the prospective class that even though they were "terminated from employment, forced to retire

3

and/or offered only 'light duty' assignments because of their disability[,]" the work they previously performed still exists, and non-disabled workers have been assigned to these jobs. (Compl. ¶¶ 44, 45.) Additionally, in the Complaint, Riley and Lewis also seek individual relief for the Intentional Infliction of Emotional Distress and violations of the Fourteenth Amendment, and 42 U.S.C. §§ 1981 and 1983(a).

## MOTION TO DISMISS STANDARD

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief.").

In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6),[2] the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the Plaintiff, and determine whether, under any reasonable reading of the complaint, the Plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holding Ltd.,* 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is

---

[2] In their Opposition, Plaintiffs argue, among other things, that the Defendants have only been granted leave to file a motion to dismiss Plaintiffs' class action complaint for failure to exhaust administrative remedies and thus Defendants' motion to dismiss any additional claims is improper. Defendants' motion to dismiss, as related to the non-class action claims, are properly brought before the Court pursuant to Fed. R. Civ. P. 12(c). Our courts have noted that "a motion to dismiss for failure to state a claim under Rule 12(c) is identical to one filed under Rule 12(b)(6), except Rule 12(c) allows for the motion to be filed after the filing of an answer, while Rule 12(b)(6) allows for the motion to be made in lieu of an answer." *Wellness Pub. v. Barefoot*, No. 02-3773, 2008 WL 108889, at * 6 (D.N.J. Jan. 9, 2008); *see also* Fed. R. Civ. P. 12(h)(2)(B). In either instance, a court is to use the same standard in evaluating the motions. *Reinbold v. U.S. Post Office*, 250 Fed. Appx. 465, 466 (3d Cir. 2007) (citing *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991)).

inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555). As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of "entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556–57, 570) (internal citations omitted). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. 1937 at 1950. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *Id.* at 1950, the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2).

## DISCUSSION

### I. The Rehabilitation Act of 1973

"[F]ailure to exhaust administrative remedies is an affirmative defense in the nature of statute of limitations." *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997). These defenses are "best resolved under Rule 12(b)(6) covering motions to dismiss for failure to state a claim." *Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997).

The Rehabilitation Act of 1973 seeks to promote the employment of individuals with disabilities in federal government, including the Postal Service.  29 U.S.C. § 794(a); *see also Spence v. Straw*, 54 F.3d 196, 198-99 (3d Cir. 1995).  Although the regulations afforded under the Rehabilitation Act grant the complaining employee the right to file a civil action in federal district court, Title VII requires that they first exhaust the available administrative remedies in a timely manner to avail themselves of this right.  29 C.F.R. § 1614.407 (1999); *Freed v. Conrail*, 201 F.3d 188, 191 (3d Cir. 2000); *Trevino-Barton v. Pittsburgh Nat'l. Bank*, 919 F.2d 874, 878 (3d Cir. 1990); *Spence*, 54 F.3d at 201 ("[a]ny effort to avoid [the Rehabilitation Act's] requirement of exhausting administrative remedies by challenging the same conduct under another provision of law must fail because it would allow Congress's careful and thorough remedial scheme to be circumvented by artful pleading") (quoting *McGuinness v. U.S. Postal Service*, 744 F.2d 1318, 1322 (7th Cir. 1984)) (internal quotations omitted).

Both the individual and class administrative remedies mandate the complaining employee(s) to submit to an internal agency procedure that includes "the filing of charges with the EEOC and the receipt of the Commission's statutory notice of the right to sue."  *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976) (citing *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973)).  With regard to class complaints, 29 C.F.R. § 1614.204(b) specifically requires a complainant to "move for class certification at any reasonable point in the process when it becomes apparent that there are class implications to the claim raised in an individual complaint."  Furthermore, "prior complaints filed by individual class members and the exhaustion of individual administrative remedies are not sufficient to satisfy the exhaustion requirements for a class action suit."  *Murphy v. West*, No. 98-2308, 1999 WL 64284, at *3 (4th Cir. Feb. 11, 1999); *see also Gulley v. Orr*, 905 F.2d 1383, 1385 (10th Cir. 1990).

In this case, Plaintiffs do not contest that they only completed the individual administrative process with the EEOC and do not argue that they made their intention to file a class complaint known.  Furthermore, Plaintiffs failed to initiate the class administrative process at anytime thereafter.  Plaintiffs argue that their class action should not be dismissed "because the EEOC could reasonably be expected to investigate the other disability claims which grew out of the allegations in Plaintiffs' charges or to connect Plaintiffs to the plethora of pending NRP related disability discrimination complaints."  (Pls.' Opp'n 11.)  However, "[w]hile preliminary requirements for a Title VII action are to be interpreted in a nontechnical fashion, . . . the aggrieved person is not permitted to bypass the administrative process."  *Ostapowicz*, 541 F.2d at 398 (citations omitted).  The exhaustion of individual administrative remedies by Plaintiffs does not satisfy the exhaustion requirements for a class action suit.  *See Lusardi v. Lechner*, 855 F.2d 1062, 1077 (3d Cir. 1988) (explaining that the majority of courts require that plaintiffs provide notice of class action allegations to survive motion to dismiss class action claim).  Consequently, Plaintiffs' class action claims are dismissed until the administrative remedies for the class complaints are exhausted.

However, to the extent that Plaintiffs Riley and Lewis are asserting individual complaints of discrimination pursuant to the Rehabilitation Act against the government, those claims remain, for now, pending further fact discovery and/or another dispositive motion.[3]

---

[3] The agency in question, not an employee's supervisor, is the only appropriate defendant in actions under the Rehabilitation Act. *See Capobianco v. Geithner*,  2009 WL 2370443, at *1 n. 3 (E.D. Pa. July 28, 2009) (dismissing claims against plaintiff's supervisor because agency was the only appropriate defendant);  *see also Hamm v. Runyon,* 51 F.3d 721, 722 n. 1 (7th Cir. 1995) ("[s]ince Section 505(a)(1) of the [Rehabilitation] Act borrows the procedures and remedies of Title VII, the exclusive remedy for a claim that a federal agency discriminated against a disabled employee or job applicant is a suit against the agency's head.").

## II. New Jersey Law Against Discrimination ("LAD")

The New Jersey Law Against Discrimination ("LAD") is preempted by the Rehabilitation Act. The Rehabilitation Act stands as the exclusive remedy for federal employees seeking redress for disability discrimination. *Brown v. Henderson*, 6 Fed. Appx. 155, 156 (3d Cir. 2001). Plaintiffs concede this point. (*See* Pls.' Opp'n. 15.) Consequently, Plaintiffs' claims under the LAD are dismissed.

## III. 42 U.S.C. § 1981 and § 1983

Both 42 U.S.C. § 1981 and § 1983 (2009) limit liability to defendants acting under color of state law. 42 U.S.C. §§ 1981(c), 1983. "[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)). The Third Circuit has held that:

> Because section 1983 provides a remedy for violations of federal law by persons acting pursuant to state law, federal agencies and officers are facially exempt from section 1983 liability inasmuch as in the normal course of events they act pursuant to federal law.

*Hindes v. F.D.I.C.*, 137 F.3d 148, 158 (3d Cir. 1998) (holding that federal officers may only be subject to liability under 1983 and 1981 when they have acted under color of state law, for example in a conspiracy with state officials); *see also Huertas v. U.S.*, No. Civ. 04-3361, 2005 WL 1719143, at * 3 (D.N.J. July 21 2005) ("section 1983 does not extend to federal officials acting under federal law").

In this case, Plaintiffs make no allegations that Defendants were acting under the color of state law. To the contrary, Plaintiffs argue that Defendants acted within the scope of their

positions as officials of the USPS (a federal agency) pursuant to the National Reassessment Process (a federally mandated USPS initiative).  (*See* Compl. ¶ 22.)  Consequently Defendants' section 1981 and 1983 claims are dismissed.

### IV. The Fourteenth Amendment

It is well-settled that the federal government and federal agencies are immune from suit absent a waiver of sovereign immunity.  *See*, *e.g.*, *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction").  The doctrine of sovereign immunity bars direct constitutional actions against federal agencies as well as constitutional tort actions against federal agencies.  *Biase v. Kaplan,* 852 F. Supp. 268, 279 (D.N.J. 1994) (holding that *Bivens* claim against United States is barred by United States' sovereign immunity).  Because the United States government has not waived sovereign immunity in this case, the constitutional claims against the USPS must be dismissed.

Regarding actions against federal agents, the Supreme Court has recognized that a *Bivens* action can be defeated "when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective."  *Purtill v. Harris*, 658 F.2d 134, 137 (3d Cir. 1981) (citing *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 397 (1971)).  The court declines to make new judicial remedies for constitutional violations when Congress has constructed comprehensive remedies that consist of "an elaborate remedial system . . . with careful attention to policy considerations."  *Bush v. Lucas*, 462 U.S. 367, 368 (1983).  In this case, Congress has provided such comprehensive remedies under Title VII and the Rehabilitation Act.  Consequently, Plaintiffs' constitutional claims against the individual Defendants must be dismissed.

### V. Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, a plaintiff must establish (1) conduct which is intentional or reckless; (2) conduct which is extreme and outrageous beyond all bounds of decency; (3) severe emotional distress which is suffered by the plaintiff; and (4) the conduct complained of was the proximate cause of the emotional distress suffered. *Griffin v. Tops Appliance City, Inc.*, 337 N.J. Super. 15, 22-23 (App. Div. 2001) (quoting *Buckley v. Trenton Sav. Fund Soc.*, 111 N.J. 355, 366 (N.J. 1988)); *see also Taylor v. Metzger*, 152 N.J. 490, 509 (N.J. 1998).

Plaintiffs' claim against the United States, for the intentional infliction of emotional distress is a common law tort governed by the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*. (2000).  This statute requires plaintiffs to "have first presented the claim to the appropriate Federal agency" and received a final denial of the claim from the agency in writing before they are allowed to file suit against the United States.  28 U.S.C. § 2675.  Plaintiffs have made no representation that any such claim was filed and thus their claim for the intentional infliction of emotions distress is precluded.

As to the claim against Bongiovanni, in his individual capacity, the claims against him must also be dismissed, irrespective of Defendants' substitution argument.  To state a claim for the intentional infliction of emotional distress, a defendant's alleged "conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Buckley*, 111 N.J. at 366 (quoting the *Restatement (Second) of Torts § 46*).

Regarding intentional infliction of emotional distress in the workplace, courts have stated the following:

10

> Clearly, intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.  It is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress. Even termination is insufficient because while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event.

*Lada v. Delaware County Community College*, No. 08-4754, 2009 WL 3217183, at *11 (E.D. Pa. Sept. 30, 2009) (internal quotations and citations omitted).

Riley and Lewis allege that they "have endured great mental suffering and suffered severe emotional distress" as a direct and proximate result of Defendants' actions, which includes Lewis and Riley's release from employment.  (*See* Compl., Third Count, ¶¶ 2, 3.)  They further allege that they have suffered "humiliation, embarrassment, [and] loss of reputation." (Compl., Second Count, ¶ 6.)  However, Defendants' actions, from which Riley and Lewis' claims allegedly arise, are general personnel actions and a common DVD policy, found within the USPS Employee and Labor Relations Manual.  (Pls.' Opp'n., Ex. F.)  Such general personnel action is not conduct so outrageous and extreme as to sustain an intentional infliction of emotional distress claim.  Consequently, those claims must be dismissed.

### VI. Substitution of United States as Party Defendant

To the extent there are any remaining or additional tort claims against Bongiovanni, this Court will address Defendants' substitution argument.  Defendants argue (in a somewhat conclusory fashion) that the Attorney General has certified that Defendant Bongiovanni was in the scope of his employment at the time of the actions relating to the Complaint and has therefore been replaced as a defendant by the United States with respect to any tort claims.  (*See* Defs.' Br. at 16); *see also* Cert. as to Scope of Employment; 28 U.S.C. § 2679.

A Certification by the Attorney General that a federal employee's acts were within the scope of employment, however, is only prima facie evidence that the employee's conduct occurred within the scope of employment and is not conclusive. *Schrob v. Catterson*, 967 F.2d 929, 936 (3d Cir. 1992); *see also Melo v. Hafer*, 912 F.2d 628, 642 (3d Cir. 1990) (holding that substitution certification is subject to judicial review). If the matter is disputed, the burden then shifts to the plaintiff, who must come forward with specific facts rebutting the certification. If facts can be determined without an evidentiary hearing, the court can rule on a pretrial motion to substitute or to set aside the substitution based on certification, pleadings, documentary evidence, and affidavits; however, if there is a genuine issue of material fact as to the scope of the employment question, the district court should permit discovery and conduct a hearing, if necessary, but should insure that both discovery and the hearing are circumscribed as narrowly as possible. *Id*.

In this case there is no genuine issue of material fact. Plaintiffs argue that "there has been inadequate discovery at this point to address whether [Bongiovanni] is individually liable for wrong doing." (Pls.' Opp'n 11.) Plaintiffs, however, set forth no facts in their complaint or pleadings creating a plausible scenario under which Bongiovanni acted outside the scope of his employment. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint should be dismissed). In fact, the affidavit of Bongiovanni, submitted in Opposition to Defs.' Mot to Dismiss, supports the proposition that Bongiovanni was acting within the scope of his employment when Defendants were reassigned pursuant to the NRP. *See* Cert. of Harriet Miller in Opp'n to Mot. to Dismiss, Ex. C at 2; *see also Jefferson v. Smyth*, No. 06-5668, 2007 WL 1589464, at * 1 (E.D. Pa. May 31, 2007) (dismissing individual claims against Post Office

employee and substituting United States as proper defendant); *Forrest City Machine Works, Inc. v. United States*, 953 F.2d 1086, 1088 (8th Cir. 1992) (where plaintiffs did not come forward with any evidence contradicting the certification and the Government's supporting exhibits, the district court did not err in denying the plaintiffs' requests for discovery prior to review of the certification).

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED. Furthermore, the caption is amended to reflect the substitution of the United States as the correct party defendant as to all remaining claims against Bongiovanni.

**SO ORDERED.**

s/ Susan D. Wigenton<br>
**Susan D. Wigenton, U.S.D.J.**

cc:  Madeline Cox Arleo, U.S.M.J.