UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RONALD RILEY, GENEVA RILEY,[1] and
GEORGE H. LEWIS, JR., on behalf of
themselves and all others similarly situated,

          Plaintiffs,

v.

JOHN E. POTTER, UNITED STATES OF
AMERICA,

          Defendants.

Civil Action No. 08-5167 (SDW)(MCA)

**OPINION**

August 25, 2011

**WIGENTON**, District Judge.

Before the Court is Defendants John E. Potter and United States of America's ("Defendants" or "United States") Motion for Summary Judgment ("Motion") pursuant to Fed. R. Civ. P. 56(c). This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is proper in this District pursuant to 28 U.S.C. § 1391. This Motion is decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons discussed below, this Court grants Defendants' Motion.

**FACTUAL BACKGROUND**

On October 21, 2008, Ronald Riley ("Riley") and George H. Lewis, Jr. ("Lewis") (collectively "Plaintiffs") initiated this class action suit on behalf of themselves and "current and former United States Postal Services ("USPS") employees who were separated from employment and/or assigned to 'light duty' at the [Dominick V. Daniels Processing and Distribution Center ("DVD")] in late 2007 or early 2008 pursuant to USPS' [sic] National

---

[1] Plaintiff Riley died on January 9, 2011. Geneva Riley is the administratrix of his estate.

Reassessment Program ("NRP")." (Compl. ¶ 8.) The Complaint alleged a violation of the Fourteenth Amendment, 42 U.S.C. §§ 1981 and 1983, Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., (the "Act") and New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 et seq., ("LAD"). Riley and Lewis also sought individual relief for the intentional infliction of emotional distress.[2] Because this action centers on the NRP and Riley and Lewis's employment histories with the USPS, a discussion of that follows.

**The NRP**

In 2007, the USPS underwent a NRP "to look at all of [the USPS's] light duty assignments and make sure there was appropriate supporting documentation." (Clark Decl. Ex. H, Bongiovanni Aff. ¶ 4.) The purpose of the NPR was to "hav[e] employee[s] update their medicals and get[] them in work that would fit their restrictions." (Clark Decl. Ex. G, Caldwell Aff. ¶ 17.) An injured USPS employee may fall into several different disability classifications. Three such categories are light duty, limited duty, and rehabilitation. (Miller Cert. Ex. 1, Rowan Dep. 25:1-6, 33:7-9.) Each of these categories is explained below.

A light duty employee is "an individual who has been injured off the job or has some other medical condition that prevents them from performing all the duties of their regularly bid position." (Id. at 18:17-21; Rowan Decl. ¶4.) A light duty position must be requested in writing. Additionally, a light duty employee may be sent home upon arrival at work if there was no work. (Miller Cert. Ex. 2, Caldwell Dep. 46:10-14.) Light duty employees are also not guaranteed forty hours of work a week. (Id. at 35:14-15.)

---

[2] On June 26, 2009, defendants John E. Potter and Frank Bongiovanni ("Bongiovanni") moved to dismiss the class action claims, the LAD claims, the Fourteenth Amendment claim, the 42 U.S.C. §§ 1981 and 1983 claims, and the intentional infliction of emotional distress claim. (Docket Entry No. 13). On January 7, 2010, this Court granted defendants' motion and removed Bongiovanni as a defendant, and the United States was substituted as the proper party defendant for all remaining claims against Bongiovanni. (Docket Entry No. 27). Therefore, the only remaining claims are Riley and Lewis's individual claims under the Act against the USPS.

Limited duty, on the other hand, is "when an employee has been injured on the job, has medical documentation, a claim has been accepted by [the Office of Worker's Compensation Program] and is documented[,] and a modified position [] [is] designed for that employee to accommodate the requirements of their disability." (Id. at 47:13-19.) However, unlike a light duty employee, if there is less than forty hours a week available for a limited duty employee, that employee is still paid for forty hours of work. (Id. at 47:20-24.)

A rehabilitation employee is one who has "been injured on the job, and in order to return that person to work, they make that person a modified job offer commensurate with . . . their abilities and limitations." (Miller Cert. Ex. 1, Rowan Dep. 24: 21-25.) If the employee does not accept the modified job offer, then he/she will be denied future benefits. (Id. at 27:1-8.)

**Ronald Ray Riley**

Plaintiff Riley began working for the USPS on June 30, 1987, as a clerk at the Bloomfield Post Office. (Clark Decl. Ex. A, Riley Dep. 18:18-20, 18:21-23.) In 1990, Riley left the Bloomfield Office and went to work at the main post office in Newark, New Jersey. (Id. at 30:19-21.) Riley worked in Newark from 1990 to 1994. (Id. at 32:21.) In or around April 1994, Riley suffered a nervous breakdown. (Id. at 11:1-2.) Riley alleges that his nervous breakdown was "work related" because he "was being harassed and management . . . [only] encouraged the harassment." (Id. at 36:8-20.) As a result of his nervous breakdown, Riley was unable to work for about three years. (Id. at 38: 9-10.) In 1996, Riley was diagnosed with schizoaffective disorder. (Id. at 58:7-19.)

When Riley returned to work in 1997, he was sent to the DVD, where he was placed on the direct bar code sorting machine ("DBCS"). (Id. at 42:1-9, 42:15-17.) However, Riley requested that he be taken off the DBCS machine because his "nerves were stressed out." (Id. at

47:11-12, 47:25.) The USPS granted his request. (Id. at 47:16.) Consequently, Riley was placed on the priority belt machine. (Id. at 51:2-4.) However, in 2003 or early 2004 he was moved to the "prep." (Id. at 51:16-17.) Riley alleges that this change in his duties was never referred to as light duty or limited duty and his assignments were never classified as permanent rehabilitation assignments. (Id. at 52:13-14, 56:12-15.)

On December 13, 2007, Riley's doctor sent a letter to the USPS stating that Riley had been diagnosed with schizoaffective disorder. (Riley Dep. Ex. 1 at 15.) The letter also stated that "[d]ue to [the] possible sedating effects of his medications, Mr. Riley should not be required to operate machinery." (Id.)

Subsequently, on December 15, 2007, Riley left the DVD after he was told that there was no work for him and that he had to apply for light duty status. (Clark Decl. Ex. 1, Riley Dep. 52:6-8, 69:1-5, 71:6-8.) Barry Harrison, a supervisor at the DVD, stated that, "[s]ince [] [Riley's] bid job is a machine job, and I found out he couldn't work around machinery, there really was no work for him." (Clark Decl. Ex. I, Harrison Aff. ¶ 5.) Nonetheless, Riley contends that there was work in his unit and he believes that he was terminated as a result of his disability. (Clark Decl. Ex. 1, Riley Dep. 71:12-18.) Additionally, Riley maintains that he was treated differently from similarly situated employees at the DVD. (Id. at 93:23-94:3, 94:21-95:2.) Riley maintains that as a result of his termination, he became depressed, and gained weight. (Id. at 102:10-15.)

On December 21, 2007, Riley requested for an accommodation under the Reasonable Accommodation Act. (Riley Dep. Ex. 1 at 17-18; Clark Decl. Ex. 1, Riley Dep. 70:9-12.) On August 22, 2008, Dr. Parikh instructed that Riley could cull mail. (Riley Dep. Ex. 4.) However, Dr. Francis Meo, the postal physician opined that in addition to culling, Riley could also sweep

4

and case mail. (Id.) On August 28, 2008, the District Reasonable Accommodation Committee ("DRAC") considered Riley's request and offered him a job as a sweeper. (Riley Dep. Ex. 5.) However, the DRAC cautioned that if Riley could not be a sweeper, it had no other available position that would meet his requirements. (Id.) Riley did not accept the sweeper position because according to him, "it makes no difference whether you're culling mail in a case and feeding the machine or sweeping it, you're still on the machine, you're still in that work environment." (Clark Decl. Ex. A, Riley Dep. 80:2-11.) Moreover, Riley testified that he could not work as a sweeper because he had "great sensitivity to loud noises." (Id. at 81:12-18.) However, Riley admits that Dr. Parikh never communicated to the USPS that he was sensitive to noises. (Id. at 83:3-10.) Consequently, on September 25, 2008, the DRAC informed Riley that it had "no record of any hearing problem or sensitivity to noises in general in [] [his] medical records;" therefore, it requested that Riley provide medical documentation to substantiate his claim. (Riley Dep. Ex. 6.) Riley testified that he provided the USPS with the results from that visit. (Clark Decl. Ex. A, Riley Dep. 84:14-18.) However, there is some dispute as to whether Riley submitted the requested proof. (Rowan Decl. ¶ 27.) Nevertheless, Riley asserts that he could have worn earplugs to reduce the noise and no one at the USPS told him that he could not use earplugs. (Id. at 85:6-11.) In fact, the DRAC officials inquired from Riley whether earplugs would sufficiently address his noise sensitivity. (Rowan Decl. ¶ 26.)

Subsequently, on October 24, 2009, Riley went back to the DVD and worked as a custodian. (Clark Decl. Ex. A, Riley Dep. 85:25-86:5.) Riley states that he was awarded this position through a bid; not as an accommodation from the DRAC. (Id. at 87:23-25, 88:9-12.)

**George Lewis**

George Lewis started working at the USPS in 1963 as a mail handler. (Clark Decl. Ex. B, Lewis Dep. 18:23-25, 21:5-7.) Lewis worked as a mail handler for about two or three years until he was relocated to the DVD in the 1970s. (Id. at 20:17-24, 29:12-14.) Lewis alleges that he suffered from back pain during the early years of his employment with the USPS and that he requested medical attention in 1979. (Id. at 26:22-27:1, 32:15-24; Lewis Dep. Ex. L-3.)

Consequently, on May 26, 1993, August 23, 1993, and October 5, 1994, Lewis "request[ed for] light duty consistent with [his] [] physical condition." (Lewis Dep. Ex. L-5 at 1-3.) On November 22, 1994, Dr. Joseph Hayes ("Dr. Hayes"), a medical officer for the USPS, noted that Lewis has been on light duty since April 15, 1993, for a non-occupational back disorder. (Lewis Dep. Ex. L-5 at 6.) Nevertheless, Lewis maintains that he has never been on light duty. (Lewis Dep. Ex. L-8.) In 1996, Lewis was put on permanent restriction because he was having difficulty with his lifting duties. (Clark Decl. Ex. B, Lewis Dep. 35:20-36:1; Lewis Dep. Ex. L-4.) Although Lewis was placed on medical restriction, he did not make a formal request for a modification of his job duties or accommodation. (Clark Decl. Ex. B, Lewis Dep. 36:9-13.) Lewis states that he merely spoke to his supervisor about modifying his duties. (Id. at 40:3-7, 61:11-13.) Lewis testified that his duties were modified so that even though he retained the position of mail handler, he did not have to do any heavy lifting. (Id. at 37:1-5, 37:12-17, 49:14-20.)

Lewis worked at the DVD performing his modified duties until he retired in February 2008. (Id. at 20:25-21:4, 49:14-15, 61:17-24.) Lewis claims he had to retire because he was told there was no work for him. (Id. at 61:4-6.) However, Lewis asserts that there was a mail handler position available, but that he was not retained for it. (Id. at 70:9-11.)

6

Although Lewis suffers from back injury, he testified that other than the lifting, pushing and pulling limitations, he has no other restrictions and he is able to function. (Id. at 65:10-68:20.) On December 2, 2008, the DRAC denied Lewis's request for reasonable accommodation because it concluded "that he was not substantially limited in a major life activity." (Rowan Decl. ¶ 32.)

**Equal Employment Opportunity Commission Determination**

On April 24, 2008, Lewis filed a complaint with the EEOC alleging disability and age discrimination and unlawful layoff or discharge. (Clark Decl. Ex. D at 1.) On September 22, 2008, the EEOC rendered a decision on Lewis's complaint stating that, "the evidence does not support a finding that the complainant was subjected to discrimination as alleged." (Clark Decl. Ex. E at 20.) Similarly, Riley filed a complaint with the EEOC in early 2008; however the EEOC concluded he "was not being discriminated against." (Clark Decl. Ex. A, Riley Dep. 100:2-18.)

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." Id. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The dispute is not genuine if it merely involves "some metaphysical

doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculation, unsupported assertions or denials of its pleadings. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp., 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." Black Car Assistance Corp. v. New Jersey, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

**DISCUSSION**

**Whether Plaintiffs Qualify as Individuals with Disabilities under the Act**

"[T]he Rehabilitation Act was meant to protect disabled individuals 'from deprivations based on prejudice, stereotypes, or unfounded fear.'" New Directions Treatment Servs. v. City of Reading, 490 F.3d 293, 307 (3d Cir. 2007) (quoting Sch. Bd. of Nassau Cnty. v. Airline, 480 U.S. 273, 287 (1987)). To state a *prima facie* case under the Act, a plaintiff must demonstrate "that he (1) has a 'disability,' (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations, and (3) was nonetheless prevented from performing the job." Kania v. Potter, 358 Fed. Appx. 338, 341 (3d Cir. 2009) (citing Wishkin v. Potter, 476 F.3d 180, 184-85 (3d Cir. 2007)). The Act defines "disability" in three ways: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1);[3] 29 U.S.C. § 705 (20)(B)(i). The EEOC's interpretive regulations define "substantially limits" to mean

> unable to perform a major life activity that the average person in the general population can perform"; or "significantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

Toyota Motor Mfg., Ky. v. Williams, 534 U.S. 184, 195-96 (2002), superseded by statute on other grounds, Amendments Act of 2008, Pub.L. No. 110-325, § 2(b)(2)-(4), 122 Stat. 3553,

---

[3] This Court notes that although the ADA was amended effective January 1, 2009, expanding the definition of "disability" under the ADA and the Act, the Third Circuit has pronounced that the amendment does not apply retroactively. Kania, 358 Fed. Appx. at 341 n.5; see also Lytes v. DC Water & Sewer Auth., 572 F.3d 936, 940 (D.C. Cir. 2009). Plaintiffs concede that the amendment does not apply retroactively. Nevertheless, they contend, without providing any supporting authority, that this action should be governed by the amendment because the USPS's "failure to accommodate continued well into and after January 1, 2009." (Pls.' Br. 8.) However, the Complaint, which was filed in 2008, pertains to conduct that occurred in 2007 and 2008. Consequently, the amendment does not apply to this matter.

3554 (2008) (quoting 29 C.F.R. § 1630.2(j)). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A); see also 29 C.F.R. § 1630.2(i).

    a. **Riley**

        i. **Disability under Subsection (A)**

Plaintiffs contend that Riley is disabled because he suffers from schizoaffective disorder. This Court disagrees. Riley's condition does not qualify as a disability under subsection (A) because it does not substantially limit one or more of his major life activities. Riley testified that his condition was "under control," and it did not prevent him from working, taking care of himself, or performing manual tasks. (Clark Decl. Ex. A, Riley Dep. 89:20-91:1.) In fact in response to questioning about how his condition limited him, Riley stated: "I'm not an invalid, I'm not a cripple, and I am not a person that cannot function." (Id. at 90:18-19.) Also, under the pre-amendment ADA, "[i]f a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures-both positive and negative- must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act." Sutton v. United Airlines, 527 U.S. 471, 482 (1999), superseded by statute on other grounds, Amendments Act of 2008, Pub.L. No. 110-325, § 3(4)(E)(i), 122 Stat. 3553 (2008). Riley testified that he was taking medication for his condition and that his condition was "under control." (Clark Decl. Ex. A, Riley Dep. 89:14-19.)

Nonetheless, Plaintiffs, relying on Verzeni v. Potter, 109 Fed. Appx. 485 (3d Cir. 2004), argue that Riley's condition is a disability as a matter of law. Plaintiffs' reliance on that case is misplaced. There, the District Court concluded as a matter of law that the plaintiff's condition,

schizophrenia, was a disability. Id. at 488. However, on appeal, the Third Circuit did not directly analyze that determination. Moreover, Riley does not suffer from schizophrenia. Furthermore, "[t]he determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." 29 C.F.R. pt. 1630, App. §1630.2(j). Consequently, the Supreme Court has cautioned that "whether a person has a disability . . . is an individualized inquiry." Sutton, 527 U.S. at 483; see also Albertson's Inc. v. Kirkingburg, 527 U.S 555, 566 (1999) (there is a "statutory obligation to determine the existence of disabilities on a case-by-case basis.").

Similarly, Plaintiffs' reliance on Taylor v. Phoenixville Sch. Dist, 184 F.3d 296 (3d Cir. 1999), is also misguided. Contrary to Plaintiffs' position, the Third Circuit did not express in Taylor that bi-polar disorder and paranoid schizophrenia were covered by the ADA as a matter of law. (See Pls.' Br. 13.) In Taylor, the Third Circuit stressed that courts should undergo an individualized assessment in order to determine if a person is disabled. 184 F.3d at 306-07. Therefore, in concluding that a reasonable jury could find that the plaintiff, who suffered from bi-polar disorder, was substantially limited, the Third Circuit underwent an extensive analysis regarding the plaintiff's impairment and how it affected a major life activity—thinking. Id. at 308-09. Additionally, the court noted that the plaintiff's medication did not control her condition. Id. at 308. Furthermore, unlike Plaintiffs posit, the Taylor Court did not cite to Bultemeyer v. Fort Wayne Cmty. Schools, 100 F.3d 1281 (7th Cir. 1996) for the position that "mental illness was not susceptible to easy measurements within the context of a summary judgment motion." (Pls.' Br. 14.) The court did not cite Bultemeyer in its discussion of whether the plaintiff was disabled; instead, it cited that case in its reasonable accommodation analysis.

11

See Taylor, 184 F.3d at 312. Therefore, contrary to Plaintiffs' assertions, the Third Circuit has not dispensed with the requirement that courts undergo a case-by-case analysis to determine if a person is disabled under the ADA.

Plaintiffs also argue that Riley is substantially limited in his thinking. However, as stated earlier, Riley testified that he is able to function. Unlike the plaintiff in Taylor, Riley has not presented any evidence indicating that he has "uncontrolled, ongoing symptoms" or that his medications affect his concentration and memory. Taylor, 184 F.3d at 308-09. In fact, he admits that his symptoms are controlled. (Clark Decl. Ex. A, Riley Dep. 89:14-19.) He also testified that his medications do not affect his memory. (Id. at 9:24-10:1.) Additionally, Riley's psychiatric evaluation on May 24, 2010, revealed that he was "alert, coherent, and fully oriented[,] . . . [h]is thought processes were rational and well integrated[,] . . . [h]is recent and remote memory [wa]s intact [and,] . . . [t]here [wa]s no evidence of paranoia or hallucinations." (Riley Dep. Ex. 7 at 3.)

This Court also disagrees with Plaintiffs' argument that Riley is substantially limited in the activity of working. (Pls.' Br. 17.) "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." Sutton, 527 U.S. at 491.

> To be substantially limited in the major life activity of working . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

Id. at 492. According to the Third Circuit, "[o]ne may be significantly restricted in one's ability to perform a class of jobs 'if one is significantly restricted in one's ability to perform most of the

jobs in one's geographical area that utilize training, knowledge, skills and abilities similar to the job one has been disqualified from performing.'" Weisberg v. Riverside Twp. Bd. of Educ., 180 Fed. Appx. 357, 363-64 (3d Cir. 2006) (quoting Williams v. Philadelphia Hous. Auth., 380 F.3d 751, 762-63 (3d Cir. 2004)).

Riley initially claimed that he was unable to operate machinery. Nevertheless, Riley's inability to operate machinery does not prevent him from performing a broad range of jobs. Riley testified that he could perform other jobs at the USPS. Riley's physician also stated that he could cull the mail. In fact, Riley was re-hired at the DVD as a custodian. Additionally, even though Riley claimed he was sensitive to loud noise, he testified that he can wear earplugs to reduce the noise. Based on the record, Riley is not substantially limited in the major life activity of working, or any other major life activity.

### ii. Disability under Subsection (B)

Similarly, Riley is not disabled under subsection (B) because he does not have a record of an impairment that substantially limits one or more major life activities. 29 U.S.C. § 705 (20)(B)(i); 42 U.S.C. § 12102(2). For a plaintiff to qualify as disabled under this subsection, he must prove that he "had a 'history of, or [had] been misclassified as having, an impairment that substantially limited a major life activity.'" Eshelman v. Agere Sys., 554 F.3d 426, 437 (3d Cir. 2009) (alteration in original) (quoting Sorensen v. Univ. of Utah Hosp., 194 F.3d 1084, 1087 (10th Cir. 1999)). As the Third Circuit has instructed, "[t]his inquiry is fact-intensive and focuses on whether the plaintiff has submitted evidence that the actual extent of his or her impairment was substantial." Eshelman, 554 F.3d at 437.

Plaintiffs have proven that Riley has a history of having an impairment because his record with the USPS documents two limitations: (1) his inability to operate machinery, and (2)

13

his sensitivity to loud noises. However, for the reasons stated above, his impairment does not substantially limit a major life activity. Therefore, he is not disabled under this subsection.

### iii. Disability under Subsection (C)

Furthermore, Riley's condition does not qualify as a disability under subsection (C). A plaintiff is "regarded" as having a disability if he:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
> (3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 187 (3d Cir. 1999) (alterations in original) (quoting 29 C.F.R. § 1630.2(l)). To be considered disabled under this subsection, "the employer must regard[] the employee to be suffering from an impairment <u>within the meaning of the statutes</u>, not just that the employer believed the employee to be somehow disabled." Rinehimer v. Cemcolift, 292 F.3d 375, 381 (3d Cir. 2002) (alteration in original) (internal quotation marks and citation omitted) (emphasis added). According to the Third Circuit, "an employer's perception that an employee cannot perform a wide range of jobs suffices to make out a 'regarded as' claim." Taylor, 177 F.3d at 188.

Riley has failed to demonstrate that the USPS believed that he could not perform a wide range of jobs. The record indicates that after Riley returned to work in 1997 and requested an accommodation, the USPS moved him from the DBCS machine and had him performing "prep" work. Subsequently, when Riley presented proof that he could not operate machinery the USPS offered him a sweeper position. Additionally, the USPS re-hired Riley as a custodian.

Therefore, Riley has not shown that the USPS "regarded" him as "disabled" within the meaning of the Act.

### b. Lewis

#### i. Disability under Subsection (A)

Lewis's limitations were identified by Dr. Hayes in 1996 as follows: "no repetitive lifting, pushing, pulling over 25 pounds. He may lift up to 44 lbs. No more than three times per hour. No repetitive bending at the waist." (Def.s' Statement of Facts ¶ 48; Clark Decl. Ex. E at 9.) According to Lewis's physician, Lewis suffers from Lumbrosacral Radiculopathy. (Clark Decl. Ex. E at 9.) Lewis contends that he is disabled as a result of these restrictions. The Third Circuit has held that "only extremely limiting disabilities - - in either the short or long-term" are covered by the ADA. Marinelli v. City of Erie, 216 F.3d 354, 362 (3d Cir. 2000). The Third Circuit as well as other courts has concluded that plaintiffs faced with restrictions and limitations similar to Lewis's are not disabled under the ADA or the Rehabilitative Act. See Benko v. Portage Area Sch. Dist., 241 Fed. Appx. 842, 848 (3d Cir. 2007) (finding plaintiff's inability to bend and perform other taxing activities insufficient to show that plaintiff is substantially limited); Marinelli, 216 F.3d at 364 (plaintiff's inability to lift more than ten pounds "does not render him sufficiently different from the general population such that he is substantially limited in his ability to lift."); Thompson v. Holy Family Hosp., 121 F.3d 537, 539 (9th Cir. 1997) (concluding that a plaintiff who was restricted "from lifting more than 25 pounds on a continuous basis, more than 50 pounds twice a day, and more than 100 pounds once a day" was not substantially limited); Aucutt v. Six Flags Over Mid-America, 85 F.3d 1311,1319 (8th Cir.1996) (a twenty-five pound lifting restriction does not substantially limit the plaintiff in major life activities); Williams v. Channel Master Satellite Sys., Inc., 101 F.3d 346, 349 (4th Cir.

1996), cert. denied, 520 U.S. 1240 (1997) ("we hold, as a matter of law, that a twenty-five pound lifting limitation - - particularly when compared to the average person's abilities - - does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity."); Evans v. Maui Cup-Leticia Corp., 2009 U.S. Dist. LEXIS 32435, at *24 (M.D. Pa Apr. 16, 2009) (holding that "a back injury that resulted in medically-imposed lifting, bending, and twisting limitations is not sufficient" for purposes of the ADA); see also Testerman v. Chysler Corp., 1997 U.S. Dist. LEXIS 21392, at *37 (D.Del. Dec. 30, 1997) (noting that "courts have generally been hesitant to find disability when an individual has a minimal to moderate restriction on lifting."). Furthermore, Lewis testified that other than the lifting, pulling and bending limitations, he has no other restrictions and he is able to function. (Clark Decl. Ex. B, Lewis Dep. 65:10-68:20.)

Nonetheless, Plaintiffs, relying on Emory v. AstraZeneca Pharm. LP, 401 F.3d 174 (3d Cir. 2004), argue that "[n]umerous cases have found that lifting and bending restrictions like those of" Lewis may constitute substantial restrictions. (Pls.' Br. 35.) Plaintiffs' reliance on Emory is misplaced. In that case, the plaintiff, who was born with cerebral palsy, suffered from "permanent partial paralysis on his right side" and his right hand, arm and leg were deformed. Emory, 401 F.3d at 175. Consequently, the plaintiff could not "lift anything heavy, or open and close his right thumb, which interferes with activities that involve the use of both hands as well [as] those requiring right-handed gripping or dexterity." Id. at 175-76. Due to his impairments, the plaintiff could not "tie his shoes or a tie, roll his sleeves, close buttons, [] put on a belt[,] . . . cut his fingernails or toenails, screw the top on a toothpaste tube, cut his own meat, open a jar, pull heavy dishes and pans in or out of the oven, change diapers, carry his children up the stairs, hold a pen or pencil in his right hand, or perform certain basic household chores and repairs." Id.

16

at 176.  In addition to his physical impairments, the plaintiff suffered from mental limitations. Id. at 176-77.  In its analysis the Third Circuit noted that "[t]he record is replete with references to the severe restrictions imposed by Emory's impairments."  Id. at 181.  Lewis's impairment and limitations are simply not comparable to those of Emory.  Lewis, other than his lifting and bending limitations, has no other restrictions; in fact he is able to function.  Consequently, Emory does not provide a basis for this Court to find that Lewis is substantially limited in his ability to perform manual tasks.  Accordingly, this Court finds that Lewis is not disabled under subsection (A).

### ii.  Disability Under Subsection (B)

This Court also finds that Lewis is not disabled under subsection (B).  Lewis's condition, as identified by Dr. Hayes, is documented with the USPS.  Nonetheless, for the reasons stated above, his impairments do not substantially limit any major life activities.  Consequently, he is not disabled within the meaning of the Act under this subsection.

### iii.  Disability Under Subsection (C)

Lewis is also not disabled under this subsection.  As stated earlier, Lewis's impairment is not substantially limiting.  Furthermore, he has not provided any evidence indicating that the USPS believed that he could not "perform a wide range of jobs."  Taylor, 177 F.3d at 188.  In fact, the record shows that when the USPS was presented with Lewis's limitations, it modified his duties so that he could perform his job but not lift as much.  (Clark Decl. Ex. B, Lewis Dep. 49:14-20.)  Lewis performed modified duties from 1996 to 2007.  (Id.)  Therefore, the USPS clearly did not perceive Lewis to be disabled.[4]

---

[4] In light of this Court's conclusion that Riley and Lewis are not disabled under the Act, it will not discuss whether Defendants provided reasonable accommodations.

## CONCLUSION

For the reasons stated above, Defendants' Motion is GRANTED.

**SO ORDERED.**

s/ Susan D. Wigenton<br>**Susan D. Wigenton, U.S.D.J.**

cc:  Madeline Cox Arleo, U.S.M.J.